## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

KENNETH L. HOFFMAN,      )
                                     )
           Plaintiff,     )
                                     )
          v.          )     No.  02-CV-3678
                                     )
JOHN E. POTTER, POSTMASTER   )
GENERAL, UNITED STATES POSTAL  )
SERVICE,                    )
           Defendant.   )

### *O R D E R*

    *AND NOW*, this _____ day of October, 2003, having reviewed and considered

Defendant's Motion for Summary Judgment pursuant to Fed.R.Civ.P. 56, and all responses

thereto;

    *IT IS HEREBY ORDERED* that Defendant's Motion for Summary Judgment is

GRANTED.

                           _____
                            **HONORABLE THOMAS N. O'NEILL, JR.**
                            United States District Court, Senior Judge

# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|                                                        |     |                   |
| ------------------------------------------------------ | --- | ----------------- |
| KENNETH L. HOFFMAN,                                    | )   |                   |
|                                                        | )   |                   |
| Plaintiff,                                             | )   |                   |
|                                                        | )   |                   |
| v.                                                     | )   | No. 02-CV-3678    |
|                                                        | )   |                   |
| JOHN E. POTTER, POSTMASTER                             | )   |                   |
| GENERAL, UNITED STATES POSTAL                          | )   |                   |
| SERVICE,                                               | )   |                   |
| Defendant.                                             | )   |                   |

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant, John E. Potter, Postmaster General of the United States Postal Service (the Postal Service) by and through his attorneys, Patrick L. Meehan, United States Attorney, in and for the Eastern District of Pennsylvania, and Nuriye C. Uygur, Assistant United States Attorney for the same district, respectfully move this Honorable Court to grant summary judgment pursuant to Fed.R.Civ.P. 56.

The grounds for this Motion are set forth in the attached Memorandum of Law in support thereof and are incorporated herein by reference. Summary judgment must be granted because: (1) no issue is in dispute entitling plaintiff to relief under the Age Discrimination in Employment Act; (2) no issue is in dispute entitling plaintiff to relief under the Rehabilitation Act of 1973; and (3) plaintiff is not entitled to punitive damages against a federal defendant under Title VII.

WHEREFORE, defendant, by and through its counsel, respectfully requests that this Motion for Summary Judgment be granted.

Respectfully submitted,

PATRICK L. MEEHAN
UNITED STATES ATTORNEY


_____
VIRGINIA L. GIBSON
CHIEF, CIVIL DIVISION


_____
NURIYE C. UYGUR
ASSISTANT UNITED STATES ATTORNEY

Of Counsel:

Mary Ellen Krober, Esq.
Attorney
United States Postal Service

Dated: September 26, 2003

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

KENNETH L. HOFFMAN,        )
                                     )
           Plaintiff,        )
                                     )
        v.                )     No.  02-CV-3678
                                     )
JOHN E. POTTER, POSTMASTER    )
GENERAL, UNITED STATES POSTAL   )
SERVICE,                      )
            Defendant.     )

**MEMORANDUM OF LAW IN SUPPORT
OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Defendant, John E. Potter, Postmaster General of the United States Postal Service ("Post Office"), by and through his attorneys, Patrick L. Meehan, United States Attorney in and for the Eastern District of Pennsylvania, and Nuriye C. Uygur, Assistant United States Attorney for the same district, hereby files the within Motion for Summary Judgment.  The evidence of record establishes that there is no genuine issue as to any material fact and that the defendant is entitled to a judgment as a matter of law.

## I.    INTRODUCTION AND FACTUAL BACKGROUND:

Plaintiff's Amended Complaint alleges unlawful discrimination under the Age Discrimination in Employment Act, as amended, 29 U.S.C. §621, *et seq.* ("ADEA") and the Americans with Disabilities Act, 42 U.S.C. §122101, *et seq.* ("ADA").[1]  Plaintiff maintains that

---

[1] The law is well-established that the ADA prohibits a covered entity from discriminating against an individual with a disability.  42 U.S.C. §12112(a).  The United States is specifically excluded from its definition.  42 U.S.C. §12111(C).  The United States Postal Service "is a branch of the United States government and so does not fall within the auspices of the ADA." D'Antonio v. Runyon, No. Civ.A. 93-3278 1994 WL 622107, at *5. (E.D.Pa. Nov. 8, 1994). Plaintiff's claims appropriately fall within the scope of the Rehabilitation Act of 1973 ("Rehabilitation Act").  Since cases that fall under the auspices of The Americans With

he was terminated from the Post Office, during his probationary period of employment, based upon age and disability discrimination.   The evidence, however, establishes that plaintiff was terminated for failing to achieve the minimum performance standards for a letter carrier. Specifically, plaintiff's claims fail for the following reasons:

1.  Plaintiff is unable to establish a *prima facie* case of age discrimination because plaintiff was not qualified for the position as a letter carrier and because similarly situated employees, not of the protected class, did not receive more favorable treatment.  In addition, plaintiff failed to offer any evidence that age was a determinative factor in his termination.

2.   Plaintiff is unable to establish a *prima facie* case of disability discrimination.  First, Mr. Hoffman was not "disabled" within the meaning of the Rehabilitation Act at the time of his employment with the Post Office.  On this point, Mr. Hoffman himself testified that, until being fired from the Post Office, he was not disabled or limited in a major life activity.  He testified that the only reason he sought a disability rating from the Veterans Administration prior to his employment with the Post Office was to get 10 points on his civil service exam.  Mr. Hoffman testified that, prior to his discharge, he was able to work and maintain his familial obligations.  In addition, Mr. Hoffman testified that he never informed his supervisors that he had a disability or requested an accommodation.  Second, plaintiff was not "otherwise qualified" for the position as a letter carrier.  Mr. Hoffman was unable to master the minimum performance standards

---

Disabilities Act and/or the Rehabilitation Act are determined by essentially the same threshold standards, plaintiff's claims will be analyzed under the presumption that plaintiff identified The Rehabilitation Act of 1973 as the proper legal authority. See McDonald v. Commonwealth of Pennsylvania, 62 F.3d 92, 94-95 (3d Cir. 1999) (congressional intention that identical standards were to be applied to both acts).

necessary to successfully complete his probationary period of employment as a letter carrier for the Post Office. Plaintiff was unable to meet standard performance times for casing mail (organizing mail by address for delivery) and delivering mail on time and without assistance from other letter carriers (Mr. Hoffman was known to ask residents on his mail route where the next address was located and the Postmaster had to send other letter carriers out to help plaintiff deliver mail).

      3.   The United States Postal Service is exempt from awards for punitive damages under Title VII; consequently, defendant is entitled to judgment in its favor on plaintiff's claim for punitive damages.

## I.    **SUMMARY JUDGMENT STANDARD:**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party moving for summary judgment has the initial burden of showing the basis for its motion. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the movant adequately supports its motion pursuant to Rule 56(c), the burden shifts to the nonmoving party to go beyond the mere pleadings and present evidence through affidavits, depositions, or admissions on file to show that there is a genuine issue for trial. Id. at 324. A genuine issue is one in which the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law. Id.

When deciding a motion for summary judgment, a court must draw all reasonable inferences in the light most favorable to the non moving party. Big Apple BMW, Inc. v. BMW of North America, Inc., 974 F.2d 1358, 1363 (3d Cir.1992), cert. denied, 507 U.S. 912 (1993). Further, a court may not consider the credibility or weight of the evidence in deciding a motion for summary judgment, even if the quantity of the moving party's evidence far outweighs that of its opponent. Id. Nonetheless, a party opposing summary judgment must do more than rest upon mere allegations, general denials, or vague statements. Trap Rock Indus., Inc. v. Local 825, 982 F.2d 884, 890 (3d Cir.1992).

## II.    STANDARD FOR DISCRIMINATION CLAIMS:

The burden of proof for discrimination cases was established in McDonnell Douglas Corporation v. Green, 411 U.S. 792 (1973). This case sets forth a three-tier test for determining whether there has been discrimination in violation of Title VII. Plaintiff has the initial burden of showing actions taken by the employer from which one can infer, if the actions remain unexplained, that it is more likely than not that such actions were based on discriminatory criteria. Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 253-54 (1981); McDonnell Douglas, 411 U.S. 79 at 802. If a prima facie case of discrimination has been established, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the challenged action. Id. The plaintiff must then show that the legitimate reason offered by the employer was not the true reason, but merely a pretext for discrimination. Burdine, 450 U.S. at 256; McDonnell Douglas, 411 U.S. at 804; see also St. Mary's Honor Center v. Hicks, 113 S.Ct. 2742 (1993). The ultimate burden of persuading the trier of fact that the employer discriminated against him/her remains with the plaintiff.

4

As noted by the Court in <u>Burdine</u>, the factual circumstances necessarily vary in discrimination cases.  Consequently, the courts have developed models for certain common situations to assist in determining whether a *prima facie* case has been established.   <u>Burdine</u>, 450 U.S. at 256, n.6; and <u>McDonnell Douglas</u>, 411 U.S.  at 802, n. 13.  Further, although <u>McDonnell Douglas</u> and <u>Burdine</u> were cases which arose under Title VII of the Civil Rights Act of 1964, as amended, the analytic framework is the same under the ADEA. <u>Simpson v. Kay Jewelers</u>, 142 F.3d 639, 643-644 (3dCir. 1998).   Plaintiff's failure to establish a *prima facie* case entitles the defendant to summary judgment without more.  <u>See</u>, <u>e.g.</u>, <u>Mitchell v. Toledo Hospital</u>, 964 F.2d 577, 582-83 (6th Cir. 1992) (affirming summary judgment where plaintiff had failed to make out *prima facie* case); <u>Panzullo v. Modell's PA., Inc.</u>, 968 F. Supp. 1022 (E.D. Pa. 1997) (same -- ADA action).

On the other hand, where plaintiff does establish a *prima facie* case, and the defendant responds by meeting its "relatively light burden" of introducing evidence of a legitimate, nondiscriminatory reason for its employment action, the plaintiff cannot survive a summary judgment motion absent "some evidence, direct or circumstantial, from which a fact finder could <u>reasonably</u> either: (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action".  <u>Fuentes v. Perskie</u>, 32 F.3d 759, 764 (3d Cir. 1994);  <u>Brethwaite v. Cincinnati Milacron Marketing</u>, 1995 WL 710578, *5 (E.D.Pa. 1995).

### A.    Plaintiff Has Not Established A *Prima Facie* Case of Age Discrimination

To establish a discrimination claim based upon age under the ADEA, plaintiff must prove that he is (1) a member of a protected class; and (2) he was qualified for the job; (3) he suffered

5

adverse employment action; and (4) similarly situated employees, not of the protected class, received more favorable treatment. <u>LaMontage v. American Convenience Products, Inc.</u>, 750 F.2d 1405, 1409 (7th Cir. 1984). In addition to the above elements, plaintiff must also show that age was a determinative factor in his termination. In other words, "but for" his age, he would not have been terminated. <u>Id.</u>

It is not disputed that plaintiff was a member of a protected class (plaintiff was 45 years old while working for the Post Office) and was subject to an adverse employment action (termination); however, plaintiff was not qualified for the job of a letter carrier and other similarly situated employees, not of the protected class, did not receive more favorable treatment. Finally, plaintiff has offered no evidence that, "but for" his age, he would not have been terminated. Consequently, plaintiff can not establish a *prima facie* case of age discrimination.

### Plaintiff Was Not Qualified For The Letter Carrier Position And Similarly Situated Employees Outside Of The Protected Class Were Not Treated More Favorably

Plaintiff's age discrimination claim fails the second and fourth elements required to establish his *prima facie* case. Evidence of record establishes that plaintiff was unable to meet minimum performance standards for casing and delivering mail, and that plaintiff was not given less favorable treatment than other probationary employees under the age of forty. For these reason, plaintiff's age discrimination case fails.

Certain objective requirements of the letter carrier position must be mastered by prospective employees of the Post Office before a permanent position is offered to them. The probationary period is a trial run at the work of a letter carrier. It is designed to weed out persons

6

who are not suited to the work and only offer permanent positions to those qualified. Two critical tasks that must be mastered to qualify as a letter carrier are: (1) casing mail; and (2) delivering the mail. Casing mail essentially involves sorting the mail by address into slots and bins for eventual delivery to postal customers. Appendix at A-37 (Cepko deposition, p. 20, lines 5-13). Letter carriers must case mail at a rate of 18 letters per minute and 8 flats per minute Appendix at A-44 (Schoch deposition, p. 38, lines 7-24); Appendix at A-39 (Cepko deposition, p. 32, lines 17-23). These casing requirements are explained to probationary employees during the interview process. Appendix at A-44 (Schoch deposition, p. 38, lines 9-20). All probationary employees are provided with a detailed explanation of what is required. Appendix at A-32 through A-35 (Bonner deposition, p. 26, lines 5 through 24; p. 27, lines 1-13; p. 30, lines 6-24; p. 31, line 1-6). Plaintiff was never able to meet the necessary performance standards or evidence improvement in his skills.

Plaintiff was provided with ample training for the position as a letter carrier. Every probationary letter carrier spends the first two weeks of employment at the training academy where new employees are shown, among other things, how to case and deliver mail. Appendix at A-49 (Schoch deposition, p. 44, line 6-24; p. 45, line 1-4). Plaintiff attended the training academy prior to beginning work at the Pheonixville Post Office. Appendix at A-9 (EEO hearing p.135). After completing training at the academy, supervisors at the Phoenixville Post Office provided guidance to plaintiff on proper casing and tips to improve his casing speed. Appendix at A-56, A-59 (Schoch deposition, p. 74, lines 12-20; p. 87, lines 4-8); Appendix at A-38 (Cepko deposition, line p. 31, lines 12-24). Plaintiff's casing abilities never improved during

7

his probationary period of employment    Appendix at A-60 (Schoch deposition, p. 139, lines 13-16).

Plaintiff also failed the minimum performance standards for delivering the mail to postal customers.   Evidence establishes that plaintiff was unable to find the addresses on his assigned route.  Postmaster Schoch testified that postal customers called to complain that plaintiff was asking them where various addresses were located on his route.  Appendix at A-57 (Schoch deposition, p. 75, lines 11-18).   Postmaster Schoch also testified that other letter carriers were sent out to assist plaintiff in delivering the mail because plaintiff was struggling with his street deliveries.   Appendix at A-58 (Schoch deposition, p.80 lines 7-10).  Postal letter carriers are required, at a minimum, to be able to case and carry three different routes in eight hours.  Appendix at A-48, A-50  (Schoch deposition, p. 43 , lines 16-24, p. 45, lines 1-3);  Appendix at A-40, A-41 (Cepko deposition, p. 47, lines 19-23; p. 48, lines 1-6).  Plaintiff was not able to case and carry even one route in eight hours.  Appendix at A-41 (Cepko deposition, p. 48, lines 7-10)

Plaintiff suggests that the other two probationary employees, younger than forty, were given more opportunities to practice casing mail.  Nothing beyond plaintiff's conclusory statements on this topic support this assertion.  In fact, computer records from the Post Office establish that plaintiff received the same or more casing opportunities than the other two probationary employees who were younger than forty.  Specifically, computer records establish that plaintiff was provided with 76.30 hours of first class mail casing time (AM Casing).   Brian Bonsall, a probationee under the age of forty, was provided with 43.34 hours and Phil Marcantonio, also a probationary employee under the age of forty, was provided with 83.10 hours of first class mail casing time (AM Casing).  Plaintiff was provided with nearly twice the casing opportunities as Mr. Bonsall and nearly identical casing opportunities as Mr.

Marcantonio.  In the area of casing third class mail, plaintiff was provided with 107.77 hours of

third class mail casing time (PM Casing).  Brian Bonsall was provided with 31.12 hours and Phil

Marcantonio was provided with 31.24.  Plaintiff received approximately 2.5 times more casing

time as his fellow probationary employees, Brian Bonsall.  In comparison, Mr. Hoffman received

almost 1.6 times more casing time as his fellow probationary employee, Phil Marcantonio.

Despite these casing opportunities, plaintiff failed to meet minimum performance expectations

for casing mail.  Appendix at A-61 through A-64 (Schoch Affidavit).

Plaintiff complains that he was not sent for automation or "DPS" training[2] with the other

two probationary employees.  Plaintiff was not sent for this automation training because he was

unable to meet minimum training milestones for casing mail as described above.   Appendix at A

67 through A-69 (Schoch Affidavit, 10/28/96); Appendix at A-16 through A-18 (Schoch EEO

testimony, pp. 239-241)   As of the date of DPS training, Mr. Hoffman's casing skills had not

improved to the point that DPS training would benefit him.  Appendix at A-16 through A-69

(Schoch Affidavit, 10/28/96).   Postal supervisors determined that "it was not necessary to send

him because he was already told what he needed to improve on in the office. . . . His casing is the

biggest thing that hurt him.  If he could have made a big turn around at the end, then his

supervisor would have had him DPS trained."   Appendix at A-69 (Schoch Affidavit, 10/28/96)

At this time, supervisors at the Post Office questioned whether Mr. Hoffman should be

terminated then for poor performance.   The Postmaster decided to allow Mr. Hoffman to

continue to practice casing mail and see if he improved.  This never happened.

---

[2] DPS is an automation system that sorts mail prior to its arrival in a letter carrier's bin.

All probationary employees are evaluated after 30, 60 and 80 days on the job. Appendix at A-52, A-53 (Schoch deposition, p. 63, line 15 through p. 64, line 15). Plaintiff's first evaluation was performed by supervisor Joseph Bonner. Appendix at A-54 (Schoch deposition, p. 69, line 24 through p. 70, line 2). The second and third evaluations were performed by supervisor Kenneth Sands. Appendix at A–43, A-51, A-55 (Schoch deposition, p.24, lines 4-10; p. 48, lines 16-21; p. 72, lines 3-19). At each evaluation, plaintiff was given "unacceptable" results in almost all areas including casing and delivering the mail. Appendix at A-3 (Employee Evaluation and/or Probationary Report). Each evaluation was signed by plaintiff and plaintiff never challenged his evaluators' findings. Appendix at A-3 (Employee Evaluation and/or Probationary Report).

Plaintiff's performance during the course of the probationary period fell below that which is legitimately expected of a letter carrier for the Postal Service. Such failure to perform the minimum performance standard of a letter carrier is what precipitated plaintiff's termination and not age discrimination. Appendix at A-1 (Termination letter dated April 22, 1996)

The Third Circuit Court of Appeals has stated that objective job performance can be considered in evaluating whether the plaintiff has met the second element of a *prima facie* case. Sempier v. Johnson & Higgins, 45 F.3d 724, 729 (3d Cir.1995); Weldon v. Kraft, Inc., 896 F.2d 793 (3d Cir.1990); Jalil v. Avdel Corp., 873 F.2d 701, 707 (3d Cir.1989). Such objective performance reviews, in fact, were utilized in determining that plaintiff was not qualified to perform the essential functions of the job as a letter carrier. The record is clear that plaintiff was never able to master the minimum performance standards of the job as a letter carrier, and that other younger employees were not given more opportunities to learn the essential skills of the job

10

- casing and delivering.  Therefore, plaintiff's claim fails to satisfy the second or fourth elements

of his *prima facie* case of age discrimination.   In any event, plaintiff wholly failed to offer any

evidence that age was a determinative factor in his termination.  No evidence has been offered

that, "but for" his age, he would not have been terminated.   LaMontage, 750 F.2d at 1409.  As

such, plaintiff ADEA claim must fail.

      **B**      **Plaintiff Fails to Establish a <u>Prima</u> <u>Facie</u> Case of Discrimination Under The Rehabilitation Act**

      Plaintiff alleges that he was discriminated against based upon a disability of anxiety

and/or nervous disorder.  Appendix at A-66 (Amended Complaint ¶¶26-30)    The Rehabilitation

Act forbids federal employers from discriminating against persons with disabilities in matters of

hiring, placement or advancement.  29 U.S.C. §791.  In order to establish a *prima facie* case of

discrimination under The Rehabilitation Act, plaintiff must show: (1) that he has a disability; (2)

that he is otherwise qualified to perform the essential functions of the job, with or without

reasonable accommodations by the employer; and (3) that he was nonetheless terminated or

otherwise prevented from performing the job.   Shiring v. Runyon, 90 F.3d 827, 831 (3d Cir.

1996).    Plaintiff is unable to satisfy these elements.

      **Plaintiff Was Not Disabled And Plaintiff Was Not Otherwise
Qualified to Perform the Essential Functions of the Job**

      A "disability" is defined as "a physical or mental impairment which substantially limits

one or more of major life activities." 29 C.F.R. §1614.203(a)(1); Sutton v. United Air Lines,

Inc., 527 U.S. 471, 482-483 (1999).   The testimony of plaintiff himself establishes that, before

being discharged from the Post Office, he was not limited in a major life activity.  Neither the

ADA nor the Rehabilitation Act defines "major life activities"; however, the Supreme Court,

noted that they are "activities of central importance to daily life".  Gallagher v. Sunrise Assisted

Living of Haverford, 268 F.Supp. 436, 440 (E.D. Pa. Feb. 14, 2003) (citing Toyota v. Williams,

53 U.S. 184 (2002)).   Because plaintiff was not limited in activities of central importance to

daily living as a result of his alleged anxiety disorder, he is not disabled as defined by the

Rehabilitation Act.

Mr. Hoffman testified that hypertension and anxiety never interfered with his ability to

work and maintain a family life until his discharge from the Post Office.  The facts on this point

are as follows.  Plaintiff was discharged from the Navy in 1971 and he was assessed with a 10%

Veteran's Administration ("VA") disability rating for hypertension, not anxiety.   Appendix at A-

2 (Armed Forces of the United States Report of Transfer or Discharge).  Plaintiff did not collect

any compensation from the VA until he sought employment with the Post Office.  Plaintiff

testified that he did not need any medication or treatment, except for blood pressure medication,

because he was able to put everything behind him and move on.  Appendix at A-22 (Hoffman

deposition, p. 39, lines 5-23; p. 40, lines 1-20).   Plaintiff testified that he held numerous jobs

after being discharged from the Navy without medication or treatment for anxiety.  Appendix at

A-13 (Hoffman EEO hearing testimony, p. 157).  Mr. Hoffman had been married for 15 years

and he had three children.  In short, before being discharged from the Post Office, plaintiff was

able to participate in all significant life activities despite an alleged anxiety disorder.  Appendix

at A-13 (Hoffman EEO hearing testimony, p. 157.)   Plaintiff did not treat or obtain medication

for his alleged anxiety/nervous condition until he sought employment with the Post Office in

1994 or 1995.  Appendix at A-24  (Hoffman deposition, p. 41, lines 1-9).   Plaintiff testified that

his sole motivation for seeking treatment at the VA in 1994-95 was to secure an additional 10 points on his civil service exam. Appendix at A-26, A-27 (Hoffman deposition, p. 43, lines 21-24; p. 44, lines 1-19).

Plaintiff applied for a job with the Post Office in 1994 or 1995. Plaintiff testified that Post Office applicants who are veterans are entitled to 10 points on their civil service exams and that Veterans assessed with a disability rating through the VA are given an additional 10 points on these exams. Appendix at A-25 (Hoffman deposition, p. 42, lines 9-21). When plaintiff applied for a job with the Post Office, he was awarded 10 points for being a Veteran, but he was told that he could not be awarded the additional 10 points for a service related disability because he was not collecting disability benefits from the VA. Without the additional 10 points for a veteran with a compensable VA disability rating, plaintiff's failed the test. Appendix at Appendix at A-26 (Hoffman deposition p. 43, lines 4-14). Upon failing the Post Office entrance exam, plaintiff went to the VA and asked to be re-evaluated for a disability and to thereafter collect VA disability benefits. Plaintiff secured a new disability rating based upon hypertension and anxiety. Plaintiff received his additional 10 points on the civil service exam and he passed the test. Appendix at A-27 (Hoffman deposition, p. 44). Plaintiff testified that he contacted the Post Office repeatedly and said "here you are post office, now give me my other ten points and give me a job[.]" Appendix at A-28 (Hoffman deposition, p. 48, lines 20-21). Shortly thereafter, he received a letter offering him a position as a probationary letter carrier. Mr. Hoffman's testimony establishes it was his desire to secure an additional 10 points on his civil service exam and not a limitation on a major life activity that caused him to seek treatment at the VA. Being

13

so, plaintiff was not disabled within the meaning of the Rehabilitation Act while working for the Post Office.

In addition, plaintiff testified that, at the time he was working for the Post Office, he was on medication to control anxiety and that this alleged disorder was not a factor in his job performance.  Plaintiff testified that any alleged anxiety condition was mitigated while working for the Post Office.   The law is clear that, "a person whose physical or mental impairment is corrected by medication or other mitigating measurements cannot be considered to have an impairment that substantially limits a major life activity."   Gallagher at 440 (citing Sutton v. United Air Lines, Inc., 527 U.S. 471, 482-483 (1999)).  For this additional reason, Mr. Hoffman did not have a disability actionable under the Rehabilitation Act.

Further proof that Mr. Hoffman did not have a disability actionable under the Rehabilitation Act was the fact that he never reported a disability to anyone at the Post Office. Plaintiff submitted to a medical exam prior to employment but never reported that he had an anxiety disorder.  (EEO hearing, p.156.) p.156.)[3]   This was so because plaintiff did not believe

---

[3] Plaintiff's Amended Complaint suggests that he was regarded as having a disability because he heard such terms as "coo-coo" and "Rambo" being yelled on the floor of the Phoenixville Post Office.  Plaintiff never informed his supervisors that these statements were being made or notified his supervisors that he was offended by these comments Appendix at A10, A-11 (Hoffman EEO testimony, pp. 142-143);Hoffman deposition, p.66; Appendix at A-14, A-15 (Cepko EEO testimony pp. 214-215); Appendix at A-19, A-20 (Schoch EEO testimony of Schoch, pp. 263-264).   Plaintiff believed such terms were mentioned to him because he was a veterans and not because he had any "disability".  Appendix at A-30 (Hoffman deposition, p. 95, lines 4-9).   Several postal employees called by the plaintiff to support his case at his EEO hearing testified that any comments that could have been made were not directed at plaintiff, but were a general manner of joking on the floor.  Appendix at A5 through A-8 (EEO hearing testimony of  Miller, pp.45-46; and Cassano, pp. 85-86).  Consequently, it is unclear what the import of these comments is on plaintiff's case.
A "regarded as disabled" claim arises when an employer mistakenly believes that an

that an anxiety affected his ability to work at the Postal Service. Appendix at A-13 (Hoffman EEO hearing testimony p. 157)    Mr. Hoffman testified that he worked for 25 years without incident despite having an alleged anxiety disorder.    Appendix at A-13 (Hoffman EEO hearing testimony, p. 157).  Plaintiff's work at the Post Office was no different.

Plaintiff's own testimony at the EEO hearing and in his deposition indicates that plaintiff was not disabled within the meaning of the Rehabilitation Act prior to or during his probationary employment with the Postal Service.    Plaintiff testified that his sole motivation for seeking medication, treatment and a disability rating from the VA was to secure an additional 10 points to pass the civil service exam and not because a disability limited a major life activity.

The second failure of proof in plaintiff's *prima facie* case under the Rehabilitation Act is that plaintiff show that he was "otherwise qualified" to perform the job as a letter carrier.  As outlined in detail above, plaintiff was never able to preform the essential functions of the job of letter carrier.  Consequently, his claim under the Rehabilitation Act fails along side his claim under the ADEA.

C.    **The United States Postal Service's Legitimate, Non-Discriminatory Reasons**

---

individual has a substantially limiting impairment.   Bullock v. Balis, 2001 WL 253857 at *7 (citing Sutton v. United Air Lines, Inc., 527 U.S. 471, 473 (1999).).   There is no evidence that would indicate that the plaintiff notified the Postal Service that he had a disability.  To the contrary, plaintiff's testimony in the EEOC hearing and at his deposition reveal that he did not report any alleged disability to his supervisors at the Post Office because he did not have one at the time he applied for a position or at the time he was hired by the Post Office.

To the extent that plaintiff is attempting to raise a claim for hostile work environment harassment in this case, these allegations must be dismissed for failure timely to exhaust administrative remedies.  Peter v. Lincoln Technical Institute, 255 F.Supp.2d 417, 426 (E.D. Pa. 2002).

Even assuming that plaintiff has alleged a *prima facie* case of discrimination under the ADEA or the Rehabilitation Act of 1973, the Post Office can rebut this presumption by offering legitimate non-discriminatory reasons for his termination during his probationary period of employment.  See <u>Brewer</u> 72 F.3d at 330.   As outlined above, defendant has established that plaintiff was not able to perform the essential functions of the job of letter carrier.  As a result, plaintiff was terminated for just cause.

The United States Postal Service has an obligation to provide efficient mail delivery to its customers.  To maintain efficient service, certain performance standards must be met by Post Office employees.  If the minimum standards of production cannot be met by any employee during their probationary period, the Post Office has an obligation to terminate the employee. Plaintiff's failure to meet these minimum standards of performance precipitated his termination. As such, the Post Office has met its burden by showing a legitimate non-discriminatory reason for terminating plaintiff – plaintiff was unable to meet the minimum standards of casing and delivering mail.

**D.    Plaintiff Is Not Entitled to Punitive Damages Under Title VII**

Plaintiff has included a claim for punitive damages against the United States Postal Service.  The law is clear that punitive damages are not recoverable against the Postal Service under Title VII.  Section 1981a  provides:

(1)    Determination of punitive damages:

A complaining party may recover punitive damages under this section against a respondent (other than a government, government agency or political subdivision)  if the complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved  individual.

16

42 U.S.C. § 1981a(b)(1).  As an agency of the federal government, the United States Postal

Service is exempt from awards for punitive damages under Title VII.  See Baker v. Runyon, 114

F.3d 668 (7th Cir.1997).  As a result, judgment must be granted in favor of defendant on

plaintiff's claim for punitive damages.

IV.    **CONCLUSION**

Defendant respectfully requests that the within motion for summary judgment be granted.

Respectfully Submitted,

PATRICK L. MEEHAN
UNITED STATES ATTORNEY


_____
VIRGINIA A. GIBSON
CHIEF, CIVIL DIVISION


_____
NURIYE C. UYGUR
ASSISTANT UNITED STATES ATTORNEY

Of Counsel:

Mary Ellen Krober, Esq.
Attorney
United States Postal Service

Dated: September 26, 2003

18

## <u>CERTIFICATE OF SERVICE</u>

I, Nuriye C. Uygur, hereby certify that on the 26th  day of September, 2003, I

caused a copy of the foregoing Motion for Summary Judgment to be served by same day hand

delivery upon:

      Harold M. Goldner, Esquire
      1420 Walnut Street
      Suite 1500
      Philadelphia, PA 19102

_____
NURIYE C. UYGUR
Assistant United States Attorney