IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

_____
                                                    :   CIVIL ACTION
KENNETH L. HOFFMAN                                  :   NO. 02-CV-3678
                                                    :
          Plaintiff,                                :
                                                    :
     v.                                             :
                                                    :
JOHN E. POTTER, POSTMASTER GENERAL,                 :
UNITED STATES POSTAL SERVICE                        :
                                                    :
          Defendants.                               :
_____:

## ORDER

AND NOW, to with this          day of                2003, upon consideration of

Defendant's Motion for Summary Judgment and Plaintiff's Reply thereto it is hereby ORDERED and

DECREED that same is DENIED in part and GRANTED in part.

Defendant's Motion is GRANTED in that Plaintiff's Claim for Punitive Damages is hereby

DISMISSED.

Defendant's Motion is DENIED as to Plaintiff's claim for discrimination under the Age

Discrimination in Employment Act and the Rehabilitation Act.

                                            BY THE COURT:


                                            _____
                                            THOMAS J. O'NEILL, JR., J.

**HAROLD M. GOLDNER, ESQUIRE**
1420 Walnut Street — Suite 1500
Philadelphia, Pennsylvania 19102

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| KENNETH L. HOFFMAN : | CIVIL ACTION |
| : | NO. 02-CV-3678 |
| Plaintiff, : |  |
| v. : |  |
| JOHN E. POTTER, POSTMASTER GENERAL, : |  |
| UNITED STATES POSTAL SERVICE : |  |
| Defendants. : |  |

**PLAINTIFF'S REPLY TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**I.   COUNTER-STATEMENT OF THE CASE:**

Kenneth Hoffman secured employment with the United States Postal Service at the Phoenixville Post Office. He started in mid-February after two weeks of classroom training. Shortly after arriving at the Phoenixville Post Office, he sat down with a supervisor and all of his employer's expectations were reviewed in detail. (Bonner Deposition, pp. 20-27[1], Appendix pp. 1-8.)

Mr. Bonner took pains to be clear and carefully enunciated the basic requirements of being a letter carrier. These were echoed, if not summarized, by the Postmaster of Phoenixville, Jeffrey Schoch, who basically said that in order to pass probation, a probationary letter carrier had to be able to case and deliver

**HAROLD M. GOLDNER, ESQUIRE**
1420 Walnut Street — Suite 1500
Philadelphia, Pennsylvania 19102

---

[1]   Reference is made in the deposition to "1750's." These are the evaluation forms which are kept on probationary employees. The form is initially filled in when Mr. Bonner explains the expectations to each probationary employee.

-1-

at least two routes and be in off the street by 3:30 p.m. (Bonner Deposition at p. 27, Appendix p. 8; Schoch Deposition at pp. 43-44, Appendix pp. 45-46).

Copious records kept by the Postal Service known as "clock rings" demonstrate that Plaintiff met these standards, but two younger probationary employees, employees without a record of disability were permitted to complete their probationary periods and offered permanent positions after probation, even though their performance was inferior to Plaintiff's.

Defendant's Motion for Summary Judgment rests on question of whether Plaintiff did or did not meet the requirements of the position. This is a genuine issue of material fact. The existence of even one genuine issue of material fact precludes any entitlement to judgment as a matter of law, such that summary judgment must be denied.[2]

## II.    STATEMENT OF FACTS:

Plaintiff's coworkers hounded and derided him about being a Vietnam Era veteran, calling him "cuckoo" and referring to him as "Rambo.[3]" This harassment was motivated by a presumption of his age coupled with either a record of disability, or his being regarded as disabled.[4] (*See,* witness statements of

---

[2]   Defendant's Motion for Summary Judgment also challenges Plaintiff's claim for punitive damages. Although Defendant cites Seventh Circuit law, the governing law in the Third Circuit is the same — barring such recovery against the USPS, and Plaintiff's claim for punitive damages may be deemed formally withdrawn, or the Motion granted *exclusively* as to that issue, as this Honorable Court deems appropriate.

[3]   Rambo is a character made famous by Sylvester Stallone ("Rocky") who was allegedly a Vietnam Veteran who was treated by his contemporaries as crazy. The character first appeared in the movie "First Blood" in 1982, and was followed by at least two more sequels, in which Stallone played the same character — John J. Rambo.

[4]   The Vietnam War ended on April 30, 1975, but no additional troops were deployed after 1974. Assuming that the Plaintiff was 18 when he was drafted, by the time of his employment with the Postal Service in 1996 he would have to have been at least 40. This Honorable Court can take judicial notice of the fact that the Vietnam War ended on the above date and the fact that 18 and 22 equal 40. FRE 201.

-2-

HAROLD M. GOLDNER, ESQUIRE
1420 Walnut Street — Suite 1500
Philadelphia, Pennsylvania 19102

Cassano, Miller, Perlstein and Smith; Plaintiff's Information for Pre-Complaint Counseling, Appendix pp. 53-67).

At the time of his hiring, Plaintiff had a 10% disability rating from the Veteran's Administration as reflected on a certification time-stamped October 24, 1994 (Page A-2 of *Defendant's* Appendix), which such disability provided him preferential treatment in applying to the United States Postal Service for Employment. (Hoffman Deposition at p. 43-44, 48, *Defendant's* Appendix, pp. A-26 to A-28). This constitutes a "record of disability" under and pursuant to the Rehabilitation Act of 1973.

Plaintiff was assigned Route 11, which was typically 'cased' (i.e. sorted) by the regular letter carrier on the route, Jim Cassano, then delivered by Plaintiff. Cassano had been injured on the job, and was on light duty, so he was limited to 'office time,' and did not typically deliver mail. (Schoch Deposition at p. 58, Appendix p. 47).

Moreover, and more importantly, the Phoenixville Postmaster, who allegedly wanted all of his probationary employees to succeed, insisted that all a probationary employee had to do to get past probation was case and deliver at least two routes and return to the office by 3:30 p.m. Plaintiff accomplished this feat at least four times, according to postal records. He did so even though he was systematically afforded less training and time casing first class mail.

At the time of his probation, there were two other probationary employees who had started within a week or two of the Plaintiff. Both of these individuals were younger than 40, and neither employee had any military or disability preference. The performance of both of these employees was markedly inferior to Plaintiff's, and one of these other employees never even delivered a second route. Yet it was Plaintiff who was discharged prior to the expiration of his probation, not them.

HAROLD M. GOLDNER, ESQUIRE
1420 Walnut Street — Suite 1500
Philadelphia, Pennsylvania 19102

**III.   ISSUES PRESENTED:**

    A.    Has Plaintiff established a prima facie case of age discrimination?

          Proposed response: Yes

    B.    Has Plaintiff established a prima facie case of discrimination under the Rehabilitation Act?

          Proposed response: Yes

**IV.   LEGAL STANDARD FOR ENTRY OF SUMMARY JUDGMENT:**

Summary Judgment can only be granted where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Rule F.R.C.P. 56(c). In determining whether there is any genuine issue of material fact, the court must resolve any factual issues of controversy in favor of the non-moving party. Lujan v. National Wildlife Federation, 497 U.S. 871, 888, 110 S.Ct. 3177, 3188 (1990). Celotex v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

It is the Court's responsibility not to resolve disputed issues of fact, but only to determine whether there exist any factual issues to be tried. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-49, 106 S.Ct. 2505, 2509-11, 91 L.Ed.2d 202 (1986). Summary judgment will not be granted unless "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248, 106 S.Ct. at 2510. In making this determination, all of the facts must be viewed in the light most favorable to the non-moving party and all reasonable inferences must be drawn in favor of the non-moving party. Sarko v. Penn-Del Directory Co., 968 F.Supp. 1026, 1031 (E.D.Pa. 1997).

HAROLD M. GOLDNER, ESQUIRE
1420 Walnut Street — Suite 1500
Philadelphia, Pennsylvania 19102

## V. ARGUMENT:

### A. THIS CASE IS SUBJECT TO THE McDONNELL DOUGLAS BURDEN-SHIFTING FRAMEWORK.

Plaintiff's claims under both The Age Discrimination in Employment Act and The Rehabilitation Act of 1973 are governed by the burden shifting framework enunciated in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), refined in <u>Texas Department of Community Affairs v. Burdine</u>, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) and clarified in <u>St. Mary's Honor Center v. Hicks</u>, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). <u>Sheridan v. E.I. DuPont Nemours and Co.</u>, 100 F.3d 1061 (3rd Cir. 1996) *(en banc)*, *cert. denied* 521 U.S. 1129, 117 S.Ct. 2532, 138 L.Ed.2d 1031 (1997).

This framework has three steps:

(1) The Plaintiff must first establish a *prima facie* case of discrimination;

(2) the burden then shifts to the defendant, who must offer a legitimate non-discriminatory reason for the action; and

(3) the Plaintiff may then "demonstrate that the employer's stated reason was not its true reason, but merely a pretext for discrimination." <u>Brewer v. Quaker State Oil Refining Corp</u>., 72 F.3d 326, 330 (3rd Cir. 1995).

The *prima facie* case is comprised of evidence that establishes an inference that discrimination motivated the adverse employment decision in the absence of an alternative explanation. <u>St. Mary's Honor Center v. Hicks</u>, 509 U.S. 502, 506, 113 S.Ct. 2742, 2747 (1993).

The *prima facie* generally involves four prongs, however the elements should not be applied rigidly. Rather, depending on the factual situation present in a particular case, the elements should vary as required to establish an early presumption of discrimination. <u>McDonnell Douglas</u>, 93 S.Ct. at 1824, note 13; <u>EEOC</u>

HAROLD M. GOLDNER, ESQUIRE
1420 Walnut Street — Suite 1500
Philadelphia, Pennsylvania 19102

v. Metal Services, Inc., 1892 F.2d 341, 347 (3rd Cir. 1990); Marzano v. Computer Science Corp., Inc., 91 F.3d 497, 508 (3rd Cir. 1996).

Generally, the *prima facie* case consists of four elements:

1. The Plaintiff is a member of one or more protected class;

2. The Plaintiff has suffered an adverse employment action;

3. The Plaintiff is qualified for the position in questions; and

4. Similarly situated individuals who are not members of the Plaintiff's protected class were treated more favorably or other circumstances suggesting discrimination in the absence of an alternative explanation. McDonnell Douglas, 93 S.Ct. at 1824; Texas Department of Community Affairs v. Burdine, 101 S.Ct. at 1094; St. Mary's Honor Center v. Hicks, 113 S.Ct. at 2747.

An employee who is otherwise qualified for a position but is terminated while others not in the protected class are retained makes out the fourth prong of the Title VII *prima facie* case. Massarsky v. General Motors Corporation, 706 F.2d 111, 118 (3rd Cir. 1983), *cert. denied,* 464 U.S. 937, 104 S.Ct. 348, 78 L.Ed.2d 314 (1983); Jackson v. University of Pittsburgh, 826 F.2d 230, 233 (3rd Cir. 1987). A *prima facie* case "is easily made out." Massarsky, *Id. See also*, Bellissimo v. Westinghouse Elec. Corp., 764 F.2d 175 (3rd Cir. 1985).

In the instant case, Plaintiff has demonstrated unequivocally that:

1. He was in at least one of *two* protected classification of being older than 40 years old; *and either* having a record of, or being regarded as having a disability;

2. He suffered an adverse employment action, termination; and

3. Others not in his protected classification, in fact, *two* younger, non-disabled employees, were permitted to remain employed. All of the foregoing was notwithstanding the fact that

HAROLD M. GOLDNER, ESQUIRE
1420 Walnut Street — Suite 1500
Philadelphia, Pennsylvania 19102

Plaintiff met all of the essential requirements of his job, and the employees who were retained failed to do so.

Once, as here, the *prima facie* is made out, the burden of going forward shifts to the Defendant who must proffer a credible legitimate and non-discriminatory explanation for terminating the Plaintiff. Apparently, Defendant claims that Plaintiff failed to perform the essential functions of his job, notwithstanding the overwhelming evidence to the contrary generated by the Defendant, and also professes that nobody knew Plaintiff was disabled.

Hence, the burden of proof and production returns to Plaintiff who must demonstrate that the reason offered by the employer was not the real reason, but rather a mere pretext for illegal employment discrimination. McDonnell Douglas v. Green, 93 S.Ct. at 1825; St. Mary's Honor Center v. Hicks, 509 U.S. at 508, 113 S.Ct. at 2748.

Plaintiff may altogether defeat summary judgment by "pointing to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Sheridan v. E.I. DuPont de Nemours and Co., 100 F.3d at 1067, quoting Fuentes v. Perskie, 32 F.3d 759, 764 (3rd Cir. 1994); Sarko v. Penn-Del Directory Co., 968 F.Supp. at 1031.

The role of this Court is to determine whether the Plaintiff has cast sufficient doubt upon the employer's proffered reasons to permit a reasonable factfinder to conclude that the reasons are incredible. Sarko v. Penn-Del Directory, 968 F.Supp. 1032 quoting Sheridan, 100 F.3d at 1072.

Pretext can be established through two approaches. The first requires either direct or circumstantial evidence to demonstrate that discrimination was more likely than not the real reason for the action taken

-7-

HAROLD M. GOLDNER, ESQUIRE
1420 Walnut Street — Suite 1500
Philadelphia, Pennsylvania 19102

by the employer. <u>Brewer v. Quaker State Oil Refining Corporation</u>, 72 F.3d 326, 331 (3rd Cir. 1995). The second approach is for the Plaintiff to cast doubt on the employer's stated reason by identifying such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered reasons for its action that a reasonable factfinder could rationally find them unworthy of credence. <u>Brewer v. Quaker State Oil Refining Corporation</u>, 72 F.3d at 331; <u>Fuentes v. Perskie</u>, 32 F.3d 759, 765 (3rd Cir. 1994).

There are many such "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the Postal Service's justification for terminating Plaintiff, however the Defendant, for purposes of its motion has alleged only two:

1. The alleged fact that the Plaintiff could not perform his job; and

2. The alleged fact that nobody at the Phoenixville post office knew about Plaintiff's disability rating.

However, as discussed more fully below, the evidence created by the Defendant itself shows both that Plaintiff *did* perform his job, and that the Plaintiff both had a record of and was regarded as disabled.

### B. THE PLAINTIFF HAS ESTABLISHED A PRIMA FACIE CASE OF AGE DISCRIMINATION.

Defendant claims that Plaintiff was unable to perform his job, and it was for this reason he was terminated. Defendant's own records of Plaintiff's employment are flatly inconsistent with this assertion.

The Postmaster of the Phoenixville Post Office during the time Plaintiff was a probationary employee testified that he expected every probationary employee to be able to case and deliver mail on his route and return to the office by 3:30 p.m., and that he be able to do so for at least two different routes (not on the same day, of course). (Schoch Deposition at p. 43-44, Appendix pp. 45-46). The activities of postal workers was and still is closely monitored, so that the efficiency of the service is not compromised.

HAROLD M. GOLDNER, ESQUIRE
1420 Walnut Street — Suite 1500
Philadelphia, Pennsylvania 19102

-8-

The manner in which this is done, at least in part, is through the maintenance of time records of the employees.

Each employee has an identification badge which has a magnetic strip. These badges are used for the employees to "ring in" to their various stations at the post office. The magnetic badge reader is an input device for a computer system which stores and compiles these "clock rings." As each employee moves from station to station or task to task through the day, he or she is to 'ring in' or swipe the badge on the clock so as to enable the Postal Service to track performance.[5]   (Schoch Deposition at pp. 13-15, Appendix pp. 36-38 ; Bonner Deposition at pp. 32-34, Appendix pp. 9-11; Sands Deposition at pp. 20-30, Appendix pp. 19-29).

These "clock rings" are coded. For instance, 782 means "training," 727 means time on the street delivering mail (also referred to as "street time") and 728 means "office time", which is usually spent in the post office sorting (or "casing") mail. (Schoch Deposition at pp.10-15)  Joseph Bonner was the only supervisor who made changes to these clock ring records, so these print outs exist as pure data reflecting *exactly* what Plaintiff and any other Postal employee was doing at any given time. (Bonner Deposition at p. 35, Appendix p. 12).

HAROLD M. GOLDNER, ESQUIRE
1420 Walnut Street — Suite 1500
Philadelphia, Pennsylvania 19102

---

[5]

It is important to note that the time reflected on the clock rings and the spreadsheet is "decimal time." That is the hours conform to a 24 hour day, but the hours are also broken into hundredths. Accordingly, 15.50 equal 3:30 p.m., 12.25 equals 12:15 p.m., 10.75 equals 10:45 p.m.,etc.

-9-

These "clock rings" of the three probationary employees during the general time period of plaintiff's employment are included in the Appendix to Plaintiff's Reply to Defendant's Motion for Summary Judgement.[6] (Appendix pp. 68-102).

Also included in the Appendix is a Spreadsheet which recompiles and compares the clock rings of the Plaintiff against those of two other probationary employees in the Phoenixville Post Office during approximately the same time period at Plaintiff — Brian Bonsall and Phil Marcantonio. Both of these two other probationary employees were under 40 and neither had any disabilities (or disability ratings). (Appendix pp. 103-104).

The clock ring comparison clearly shows that Plaintiff was given only seven chances to case and deliver mail, yet he succeeded in doing so and returning before 3:30 p.m. on two different routes 60% of the time.

Bonsall was given more than twice as many opportunities, but was successful only slightly more than 40% of the time.[7] Marcantonio was given more than three times as many opportunities as Plaintiff to case and deliver mail, yet he only succeeded 40% of the time, *and only delivered one route.*

As such, the Plaintiff's performance was actually *superior* to both of the other probationary letter carriers, yet it was the other two not in the protected classifications who were retained and offered

---

[6] For clarity, the pertinent sections of the clock rings have been marked with a blue box on the electronic version of the Appendix. These blue boxes are not part of the original print outs, which were photocopied and turned over to Plaintiff in the discovery process. (Appendix pp. 68-102).

[7] The clock rings also show that Bonsall was repeatedly late, frequently arriving after 7:00 a.m. This is inconsistent with Bonner's assertion that 'regular attendance' was required of all probationary employees. (Bonner Deposition at p. 47, line 8, Appendix p. 18).

HAROLD M. GOLDNER, ESQUIRE
1420 Walnut Street — Suite 1500
Philadelphia, Pennsylvania 19102

positions. (Schoch Deposition at pp. 24-25, Appendix pp.43-44 ; Sands Deposition at pp. 62-64, Appendix pp. 30-32).

The Defendant's records also reflect that Plaintiff's immediate supervisor systematically discriminated against Plaintiff.

Back in 1997, after Plaintiff was discharged, the Phoenixville Postmaster asked the Delivery Supervisor, Kenneth Sands (Plaintiff's immediate supervisor) to compile additional data based upon the clock ring system for him. (Schoch Deposition at pp. 125-126, Appendix pp. 51-52). These particular spreadsheets were submitted by Miriam Colsky, HR Associate at the U.S. Postal Service pursuant to a Certificate of Service made part of the Appendix hereto to an Administrative Law Judge for the Equal Opportunity Commission on January 14, 1998. (Appendix p. 105). The three spreadsheets have fax headers dated September 24, 1997 from the Phoenixville Post Office showing a fax number of 610-993-0205 (Appendix pp. 106-111).

Each of these spreadsheets breaks out by employee for every day of service the assignment, the beginning of the employee's tour, the end of the employee's street tour and how many hours total were spent in the office. The spreadsheets, however, cover varying time periods, and are misleading unless only the time period common to all three probationary employees is evaluated.

The only time period which all three employees shared in common was the period from March 18, 1996 through April 22, 1996. Thus, accepting Mr. Sands' compilations as true, but taking *only* those time periods during which *all three probationary employees* were working at the Phoenixville Post Office, the spreadsheets show that Plaintiff was given 5,934 minutes of office time from March 18 through and including April 22, whereas Marcantonio 7,347 minutes and Bonsall received 7,000 minutes. Thus, Plaintiff

HAROLD M. GOLDNER, ESQUIRE
1420 Walnut Street — Suite 1500
Philadelphia, Pennsylvania 19102

-11-

received nearly 20% *less* time on-the-job training than other probationary employees in the critical skill of casing mail.

The assignment of casing time was done by the Delivery Supervisor, Sands, who obviously discriminated against Plaintiff in his assignments, apparently in an overt effort to increase the likelihood of Plaintiff's failure and ultimate termination, so as to rid the Phoenixville Post Office of that "cuckoo." Despite this overt discrimination by Sands, Plaintiff performed *better* than the other two probationary employees!

All of these figures which demonstrate the discrimination against Plaintiff were generated by the Defendant. They are the records of the postal service and are unassailable. It is the postal service's own copious records which demonstrate the "inconsistency" in the preferred reasons for not retaining the plaintiff for a permanent position.

More importantly, whether Plaintiff in fact performed or did not perform up to his employer's standards is a genuine issue of material fact, the existence of which precludes the entry of Summary Judgment at this time.

### C. THE PLAINTIFF HAS ESTABLISHED A PRIMA FACIE CASE OF DISCRIMINATION UNDER THE REHABILITATION ACT.

Assuming Plaintiff demonstrates a genuine issue of material fact regarding his performance, Defendant's argument regarding discrimination based on disability also fails.

Defendant mistakenly focuses on the issue of whether the plaintiff actually had a disability which impaired one or more life activity such that it would have been compelled to accommodate him under the Rehabilitation Act. However, Plaintiff is also protected by the Rehabilitation Act where he has a "record

HAROLD M. GOLDNER, ESQUIRE
1420 Walnut Street — Suite 1500
Philadelphia, Pennsylvania 19102

of disability" or he is "regarded as" disabled. 29 U.S.C.S. §791(g) applying §504 of the Americans with Disabilities Act defining "handicapped individual."[8] Plaintiff falls into both of these latter two classifications.

Defendant virtually concedes that Plaintiff had a record of a disability. Regardless of whether the disability was based upon a neuroses or hypertension, Defendant's claim that nobody knew of Plaintiff's record of disability is inherently incredible because it was that record which provided the plaintiff a preference ultimately leading to his employment in the first place. (*See,* A-2 of *Defendant's* Appendix.)

Moreover, the derision and hostility with which the plaintiff was met was a manifestation of the manner in which the plaintiff was regarded by his co-workers. The derogatory references to Rambo and 'going postal' and 'the blind leading the blind' all reflect the discriminatory animus towards Plaintiff on the office floor — and such conduct occurred in the plain view of supervisors such as Bonner and Sands. (*See,* witness statements of Cassano, Miller, Perlstein and Smith; Plaintiff's Information for Pre-Complaint Counseling, Appendix pp. 53-67).

Therefore it does not matter whether the plaintiff was *actually disabled*, only that he both had records of disability and that he was regarded as disabled — and these are genuine issues of material fact which exist to bar the entry of Summary Judgment for Defendant.

## VI. CONCLUSION:

While there is a great deal more evidence in the case, that portion of the evidence discussed in this Memorandum of Law and supporting Appendix demonstrates that the Plaintiff can prove his *prima facie* case both on age and disability bases, as well as produce evidence showing that Defendant's alleged justification for terminating him is not worthy of belief.

---

[8] Defendant correctly points out that this matter falls under the Rehabilitation Act of 1973 as amended, which incorporates much of the ADA by reference, but not under the ADA itself.

HAROLD M. GOLDNER, ESQUIRE
1420 Walnut Street — Suite 1500
Philadelphia, Pennsylvania 19102

Under the McDonnell-Douglas analysis, then, a reasonable jury could conclude that Plaintiff's termination was motivated by discriminatory animus towards the Plaintiff on the basis of age or disability. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-49, 106 S.Ct. 2505, 2509-11, 91 L.Ed.2d 202 (1986).

Genuine issues of material fact exist with respect to Plaintiff's claims, and accordingly, Rule 56 does not permit the entry of judgment as a matter of law at this time. Accordingly, Defendant's Motion for Summary Judgment should be dismissed.

Respectfully submitted;

_____
HAROLD M. GOLDNER, ESQUIRE
Attorney for Plaintiff
Attorney I.D. No. 32367
Suite 1500, 1420 Walnut Street
Philadelphia, PA 19102

HAROLD M. GOLDNER, ESQUIRE
1420 Walnut Street — Suite 1500
Philadelphia, Pennsylvania 19102

## **CERTIFICATE OF SERVICE**

I do hereby certify that the within Proposed Order, Answer to Motion for Summary Judgment, and Appendix thereto was served upon counsel for Defendant below named via first class mail, postage prepaid on October 16, 2003:

>Nuriye C. Uygur, Esquire
>U S Attorney's Office
>615 Chestnut Street, Suite 1250
>Philadelphia, PA 19106

HAROLD M. GOLDNER, ESQUIRE

Date: October 16, 2003

**THIS DOCUMENT HAS BEEN ELECTRONICALLY FILED AND IS AVAILABLE FOR VIEWEING AND DOWNLOADING FROM THE ECF SYSTEM**

**HAROLD M. GOLDNER, ESQUIRE**
1420 Walnut Street — Suite 1500
Philadelphia, Pennsylvania 19102